**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JASON ROBB,**

      **Petitioner,**

   **v.**                               **Case No. 2:02-cv-535**
                                           **JUDGE ALGENON L. MARBLEY**
**TODD ISHEE, Warden,**               **Magistrate Judge Norah McCann King**

      **Respondent.**

**OPINION AND ORDER**

      Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. §2254.  This matter is before the Court upon James Were's motion to intervene for the limited purposes of modifying the protective order and conducting discovery (Doc. # 94), Respondent's memorandum in opposition (Doc. # 101), and Were's reply in support (Doc. # 102).

      On September 16, 2004, this Court issued an *Opinion and Order* granting Petitioner leave to conduct limited discovery on his claim that the prosecution withheld material, exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. (Doc. # 34.) This Court's original discovery order authorized Petitioner to obtain all prior statements made by Anthony Lavelle and Robert Brookover in connection with the Lucasville riot investigation, as well as all statements provided by others in connection with the Lucasville riot investigation that did ***not*** implicate Petitioner Robb in the murders of prison guard Robert Vallandingham or of inmate David Sommers.

      On December 29, 2005, this Court signed a Stipulation and Protective Order submitted

by the parties governing the use and protection of information or documents obtained by counsel for Petitioner pursuant to the Court's September 16, 2004 discovery order. (Doc. # 57.) In relevant part, the order substantially limits disclosure of the identities of inmates who cooperated with the State of Ohio in the investigation and prosecution of participants in the Lucasville riot that occurred between April 11, 1993 and April 21, 1993. (*Id.*, at 2-3.) That protective order remains in full force and effect.

In an effort to ensure compliance with this Courts September 16, 2004 discovery order, counsel for Respondent recently arranged to make available for inspection by Petitioner's counsel not only investigative files stored in one or more Columbus, Ohio warehouses, but also the files maintained by the trial prosecutors in Petitioner's case, subject to an *in camera* review by this Court of documents believed by the prosecutors to constitute attorney work product not subject to disclosure. The parties are in the process of devising and implementing the procedures by which counsel for Petitioner will review these materials, which procedures will require considerable participation by Captain J.D. Brink of the Ohio State Highway Patrol. Counsel for Respondent has identified Captain Brink as the person most familiar with the storage and organization of investigative materials stemming from the investigation of, and prosecutions stemming from, the Lucasville riot.

On August 16, 2007, James Were filed a motion to intervene in this habeas corpus action for the limited purposes of modifying the protective order and conducting discovery. Were, like Robb, was convicted and sentenced to death for his role in the killing of Correction Officer Vallandingham. Were, like Robb, alleges that the Lucasville Special Prosecutors denied him a fair trial by failing to disclose exculpatory evidence, including but not limited to, information

2

concerning the role of inmate-witness Anthony LaVelle in the killing of Vallandingham. Were, unlike Robb, is still challenging his convictions and sentences in the Ohio courts, with a direct appeal pending in the Supreme Court of Ohio, an appeal from the denial of an Application for Re-Opening pending in the Supreme Court of Ohio, and a petition for postconviction relief pending in the trial court. Specifically, Were asks this Court (1) to modify its protective order to allow counsel for Were access to whatever information counsel for Robb learns in connection with this Court's September 16, 2004 discovery order, subject to the same conditions and restrictions, and (2) to allow counsel for Were to participate in the discovery process with counsel for Robb.

Were requests permissive intervention in the instant habeas corpus proceeding pursuant to Fed. R. Civ. P. 24(b). That rule provides in relevant part that, "On timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." (Fed. R. Civ. P. 24(b)). Thus, in exercising its discretion whether to allow Were to intervene in this death penalty habeas corpus action, this Court must consider at a minium (1) whether Were's motion is timely, (2) whether Were possesses a claim that shares with this habeas action a common question of law or fact, and (3) whether Were's intervention will unduly delay or otherwise prejudice the adjudication of the original parties' rights. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997) ("So long as the motion for intervention is timely and there is at least one common question of law or fact, the balancing of undue delay, prejudice to the original parties, and any other relevant factors is reviewed for an abuse of discretion.") In

3

the Sixth Circuit, courts are to construe Rule 24(b) broadly to favor potential intervenors.

*Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999), *rev'd on other grounds*, 539 U.S. 244

(2003); *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991).

      The Court must first determine whether the application to intervene is timely.  In

addressing timeliness, the Court must consider:

> (1) the point to which the suit has progressed; (2) the purpose for which
> intervention is sought; (3) the length of time preceding the application during
> which the proposed intervenor knew or reasonably should have known of his
> interest in the case; (4) the prejudice to the original parties due to the proposed
> intervenor's failure, after he or she knew or reasonably should have known of his
> interest in the case, to apply promptly for intervention; and (5) the existence of
> unusual circumstances militating against or in favor of intervention.

*United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (quoting *Grubbs v. Norris*, 870

F.2d 343, 345 (6th Cir. 1989)).  The Court is of the view that Were's motion is timely and

Respondent does not appear to argue otherwise.  In spite of the time that has passed since

Petitioner Robb initiated this habeas corpus proceeding, his action, as well as the discovery to

which Were seeks access, are in their infancy.  As has been noted, Were seeks intervention for

the limited purposes of modifying the protective order to allow his counsel, subject to the

conditions and restrictions set forth in that protective order, access to the discovery to which this

Court has found that Petitioner Robb is entitled and that respondent has made arrangements to

provide.  The limited nature of Were's request militates in favor of allowing intervention.  *Cf.*

*Kerasotes Michigan Theatres, Inc. v. National Amusements, Inc.*, 139 F.R.D. 102, 103 (E.D.

Mich. 1991) ("In the Sixth Circuit, permissive intervention under Fed. R. Civ. P. 24(b) has been

held to be a proper method for a non-party to challenge a protective order by limited intervention

for discovery purposes.") (citing *Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*, 823 F.2d

4

159, 162 (6th Cir. 1987), and *In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation*, 664 F.2d 114, 118 (6th Cir. 1981)).

Further, although the record does not reflect at what point Were became aware of his interest in gaining access to Petitioner Robb's discovery, it does not seem likely that he waited an unreasonable amount of time before filing his motion to intervene, given that this case has seen its share of delays and that the discovery at issue--namely, Respondent's actions in making available to Petitioner all of the evidence and investigative files stemming from the Lucasville riot in an effort to provide to Petitioner the information to which he is entitled pursuant to this Court's September 16, 2004 discovery order--only recently commenced.  Were filed his motion to intervene on August 16, 2007, just three months after this Court's May 24, 2007 order setting forth the scheduling order for the examination of the materials that Respondent agreed to make available to Petitioner's counsel.  That being so, Respondent has not argued, and the Court is not otherwise aware of, any prejudice that the original parties have suffered from the delay, if any, between the time that Were became aware of his interest in gaining access to Petitioner Robb's discovery and the time that Were sought to intervene.

The final factor to be considered in determining whether Were's motion to intervene is timely is whether there are any unusual circumstances militating for or against intervention.  In this regard, the Court would be remiss if it did not note the unusual circumstances presented by Were's attempt to intervene in a habeas corpus proceeding--a proceeding that is, by its very definition and nature, uniquely personal to the habeas applicant seeking to overturn a state criminal judgment on the basis of constitutional errors that occurred in connection with his trial. That said, this factor does not necessarily militate against intervention, given the limited

5

purposes for which Were seeks to intervene, and it certainly does not warrant a finding that his application is somehow untimely.  Were does not seek to influence, and likewise has no stake in, the adjudication of any of Petitioner Robb's claims.  Nor does he seek adjudication of any claims of his own.  He seeks only information to assist him in litigating his own constitutional claims.

Having concluded that Were's application is timely, the Court must now consider whether Were possesses a claim that shares with this habeas corpus action question(s) of fact or law in common.  As Were correctly points out, the Sixth Circuit has held that an applicant seeking to intervene for the limited purposes of modifying a protective order or conducting discovery need not make a stringent showing of commonality between his claim(s) and the action into which he seeks to intervene.  *Meyer Goldberg*, 823 F.2d at 164 (observing that there is no requirement of a stringent showing of a strong nexus of common fact or law where movant sought intervention for purposes of discovery to pursue a related claim concerning alleged misconduct in which the public had a strong interest).  In the instant case, it tests the limits of credulity to suggest that Were does not possess a claim sharing with the instant action common questions of law and fact.

As noted above, Were, like Robb, was convicted and sentenced to death for his role in the killing of Correction Officer Vallandingham, albeit in a separate trial.  Were, like Robb, alleges that the Lucasville Special Prosecutors denied him a fair trial by failing to disclose exculpatory evidence, including but not limited to information concerning the role of inmate-witness Anthony LaVelle in the killing of Vallandingham.  Were, unlike Robb, is still challenging his convictions and sentences in the Ohio courts.  One reason that Respondent advances in support of his argument that the claims are factually and legally distinct is that there is no reason to

believe that this Court's adjudication of Robb's claim will affect the adjudication of Were's claim. That argument misses the mark. As the Court noted above, Were seeks to intervene not to influence the adjudication of Robb's claims and not to invite this Court to adjudicate any of his own claims, but for the limited purposes of modifying the protective order and gaining access to the discovery conducted by Petitioner Robb. Under these circumstances, the fact that this Court's adjudication of Robb's claims will have no effect on the adjudication of Were's claims is immaterial to the inquiry of whether their claims share any common questions of law or fact.

Another reason that respondent advances in arguing that the claims are distinct is that, because Were and Robb were convicted and sentenced in separate proceedings, "[w]hether the state violated Were's constitutional right to a fair trial by suppressing material, exculpatory evidence depends not on the nature of the allegedly suppressed evidence in and of itself, but whether there is a reasonable probability that the non-disclosed evidence, *considered in the context of the evidence presented at Were's trial*, would have resulted in a different verdict." (Doc. # 101, at 8, citing *Strickler v. Green*, 527 U.S. 263, 281 (1999)). This Court is not persuaded by Respondent's argument. As a preliminary matter, Were and Robb appear to present the same legal claim--namely, that the State deprived each of them of the right to a fair trial by failing to disclose material, exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, and its progeny. That Courts may vary in the application of that law, based on the particular facts before them, does not change the fact that those claims find their genesis in the same body of law.

Further, Were appears to possess a claim that shares with Petitioner Robb's claim common questions of fact. Although the separate conduct of the respective prosecutors, as well

as the strength of the evidence presented in each criminal prosecution, will inform the ultimate adjudication of any claims of the denial of a fair trial due to the suppression of material, exculpatory evidence, the adjudication will also turn in part on the nature of the evidence itself, irrespective of the particular conduct of the respective prosecutors or the strength of the evidence presented in each case.  It is true, as Respondent points out, that Were and Robb were convicted and sentenced in completely separate trials and that, while Robb is before this Court challenging his convictions and sentences in a habeas corpus proceeding, Were is still challenging his convictions and sentences in the state courts.  However, Were possesses a claim that shares with this habeas corpus action common questions of fact, insofar as both Were and Robb were convicted and sentenced to death for their role in the killing of Officer Vallandingham during the Lucasville riot and both allege, albeit in different legal proceedings, that the Lucasville Special Prosecutors denied each of them a fair trial by failing to disclose material, exculpatory evidence, including but not limited to information concerning the role of inmate-witness Anthony LaVelle in the killing of Officer Vallandingham.  Thus, and particularly under the relaxed standard that governs cases of intervention for the limited purpose of conducting discovery, the Court concludes that Were possesses a claim that shares with the instant action common questions of law and fact.

The third factor for the Court to consider in deciding whether to permit Were to intervene is whether the intervention will unduly delay or otherwise prejudice the adjudication of the rights of the original parties.  The Court is of the view that intervention will not unduly delay this action.  As the Court noted in concluding that Were's application was timely, in spite of the time that has passed since Petitioner Robb initiated this habeas corpus proceeding, his action, as well

8

as the discovery to which Were seeks access, are in their infancy. Further, in seeking intervention for the limited purposes of modifying the protective order and gaining access to the discovery, Were does not seek to become an active litigant in this matter who might be requesting extensions of time, discovery of his own, or anything else that would delay this proceeding. If anything, counsel for Were might aid in the expediency of this proceeding, or at least the discovery, by providing assistance to counsel for Petitioner Robb in sifting through the vast amount of material that Respondent has arranged to make available.

Regarding possible prejudice to the original parties, where, as here, permissive intervention is sought for purposes of modifying a protective order and gaining access to protected materials, the Court must determine, in assessing whether intervention will prejudice the rights of the original parties, whether access to the protected material can be granted without harm to legitimate secrecy interests. *Meyer Goldberg*, 823 F.2d at 163 (citation omitted). "If so, 'access should be granted even if the need for the protected materials is minimal.'" *Kerasotes*, 139 F.R.D. at 106 (quoting *Meyer Goldberg*, 823 F.2d at 163). Although the secrecy interest typically served by orders protecting discovery material is efficiency and expediency in the discovery process, *see Kerasotes*, 139 F.R.D. at 104-06 (discussing *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427-28 (10th Cir. 1990)), the secrecy interest served by the agreed-upon protective order in this case, to put it bluntly, is to protect inmate-witnesses who cooperated with or provided information to law enforcement officials investigating the Lucasville riot from possible reprisal by those who were tried and convicted for the most serious offenses stemming from that riot. Although Were appears to question the legitimacy of that secrecy interest, (Doc. # 94, at 15-16), this Court does not and it bears reminding that the parties

in this case agreed upon and proposed the protective order adopted by the Court in this case.
The Court concludes that the secrecy interest can be protected by subjecting Were's counsel to
the same conditions and restrictions to which counsel for Petitioner is subject under the current
protective order.  *See Kerasotes*, 139 F.R.D. at 106 (holding that Defendants' interest in secrecy
would be preserved where intervenor had access to the protected materials only subject to the
continuing provisions of the original protective order).

 Having concluded that Respondent's secrecy interest can be adequately protected, the
Court further concludes that Were's need for the protected material is at least minimal.  At the
very least, the discovery made available to Petitioner Robb in this case could lead to admissible
evidence for Were as he challenges his convictions and sentences in state courts, save significant
time and effort in the instant litigation by providing assistance to Petitioner's counsel, and
prevent the possibility that Were might have to duplicate this discovery in the future.  *See
Kerasotes*, 139 F.R.D. at 106.  To be fair, Were's need for such information is probably more
than minimal, given the reality that convicted defendants bear a substantial burden of proof and
production when they seek to plead, prove, and prevail on claims of alleged constitutional error
sufficient to overturn the state criminal judgments against them.

 One of the arguments that Respondent makes in opposing Were's intervention in this
proceeding is that the Federal Rules of Civil Procedure governing discovery and intervention are
incompatible with the Rules Governing Section 2254 Cases.  Respondent correctly points out
that both the Federal Rules of Civil Procedure and the Rules Governing Section 2254 Cases
make clear that the Federal Rules of Civil Procedure apply to habeas corpus proceedings only to
the extent that the civil rules are not inconsistent with rules governing habeas corpus

proceedings.[1]  Specifically, Respondent argues that permissive intervention in a habeas corpus

action for the limited purpose of conducting discovery is incompatible with and not permitted

under Rule 6 of the Rules Governing Section 2254 Cases because Rule 6 provides that a habeas

corpus litigant, unlike litigants in ordinary civil proceedings, are not entitled to discovery as a

matter of course.  Rather, a habeas corpus petitioner is entitled to discovery only upon a showing

of good cause, which exists only "'where specific allegations before the court show reason to

believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is .

. . entitled to relief'."  (Doc. # 101, at 7, quoting *Bracy v. Gramley*, 520 U.S. 899, 909 (1997)).

Thus, Respondent argues, "the Court in habeas corpus is patently without any authority to permit

discovery to a non-party that is not related to adjudication of a claim before the Court."  (Doc. #

101, at 7.)  Respondent further argues that "a non-party like Were can never show 'good cause'

because he has not presented to the Court specific factual allegations which if factually

developed would entitle him to relief from the federal habeas court."  (Doc. # 101, at 7.)

Respondent's arguments would be well taken, were Were seeking to join in this action so that he

could ask for discovery of his own, rather than just access to the discovery for which Petitioner

Robb has already established good cause.  That relief, without a claim or habeas action before

the Court, Were could not request and this Court would not authorize.

     Pointing to the fact that Were is still challenging his convictions and sentences in the

---

[1]     Rule 81(a)(4)(A) of the Federal Rules of Civil Procedure provides: These rules apply to
proceedings for habeas corpus and for quo warranto to the extent that the practice in those proceedings is not
specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases.

     Similarly, Rule 11 of the Rules Governing Section 2254 Cases provides: The Federal Rules of Civil
Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to
a proceeding under these rules.

state courts, Respondent argues that this Court cannot permit Were to intervene in the instant action because the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), obligates this Court to abstain from adjudicating a matter that is properly before the state courts. Specifically, Respondent argues that "permitting Were to conduct discovery could interfere with the state courts' legitimate interest in requiring Were to comply with state rules governing discovery and other procedures."  (Doc. # 101, at 6.)  Respondent's argument is not persuasive. As Were has made clear and as this Court has repeatedly noted, Were seeks to intervene in this action not to obtain the adjudication by this Court of the merits of any constitutional claims he might possess, but for the limited purposes of modifying the protective order to gain access to discovery.  Respondent does not suggest--and cannot--that Ohio's laws and rules prohibit a criminal defendant (on appeal or in postconviction proceedings) from learning more about their cases or claims.  They merely specify the limited circumstances under which the state courts will authorize and sanction formal discovery associated with those proceedings.  In any event, if the information learned by a criminal defendant and presented to the Ohio courts is determined by those courts to be inappropriate, then the state courts can decline to entertain the submission. Thus, nothing about permitting Were to intervene in this habeas corpus action interferes with the state courts' adjudication of the merits of Were's constitutional claims.

Respondent also argues that this Court cannot permit Were to intervene in this habeas corpus action because the exhaustion doctrine set forth in 28 U.S.C. § 2254(b)(1)(A) precludes this Court from exercising any jurisdiction over any constitutional claims that Were might possess.  As this Court noted above, however, Were seeks to intervene in this action not to obtain the adjudication by this Court of the merits of any constitutional claims he might possess, but for

the limited purposes of modifying the protective order to gain access to discovery. That being so, this Court is not persuaded that the exhaustion doctrine set forth in § 2254(b)(1)(A) precludes intervention for such limited purposes.

For the foregoing reasons, Were's motion to intervene (Doc. # 94) is **GRANTED**, subject to strict compliance with and adherence to every provision set forth in the Stipulation and Protective Order f 12/29/2005 (Doc. # 57). The Stipulation and Protective Order of 12/29/2005 (Doc. # 57) is **HEREBY MODIFIED** to add counsel for James Were in the same capacity as counsel for Petitioner Jason Robb.

**IT IS SO ORDERED.**

                                               **s/Algenon L. Marbley**
                                             **ALGENON L. MARBLEY**
                                             **United States District Judge**

**Date: February 13, 2008**

13