IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JASON ROBB,

    Petitioner,

  v.                                   Case No. 2:02-cv-535
                                       JUDGE ALGENON L. MARBLEY
TODD ISHEE, Warden,             Magistrate Judge Norah McCann King

    Respondent.

**OPINION AND ORDER**

      Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. § 2254. This matter is before the Court upon Petitioner's motion for a supplemental discovery order (ECF No. 113), Respondent's memorandum in opposition (ECF No. 114), and Petitioner's reply (ECF No. 117).

      This Court's September 16, 2004 *Opinion and Order* granted Petitioner leave to conduct limited discovery on his claim that the prosecution withheld material, exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. (ECF No. 34.) Specifically, in relevant part, the Court authorized Petitioner to obtain all prior statements made by inmates Anthony Lavelle and Robert Brookover in connection with the Lucasville riot investigation, as well as all statements made by others in connection with the riot that did <u>not</u> implicate Petitioner Robb in the murders of corrections officer Robert Vallandingham or of inmate David Sommers.

      Counsel for Respondent secured the agreement of the principal attorney involved in the prosecution of the offenses related to the Lucasville riot, and of an official of the Ohio State

Highway Patrol ("OSHP") familiar with the location and storage of investigative reports and other documents concerning the riot, to make available for inspection and copying by Petitioner's counsel not only investigative files stored in Columbus, Ohio warehouses, but also the files maintained by the trial prosecutors in Petitioner's case, subject to *in camera* inspection by this Court of documents believed by the prosecutors to constitute attorney work product not subject to disclosure. After Respondent submitted those materials and the Court conducted its *in camera* review, the Court issued an *Opinion and Order* on February 26, 2009, under seal, identifying those documents that, in the Court's view, constituted protected attorney work product not subject to disclosure. (ECF No. 106.) On March 23, 2009, the Court issued another *Opinion and Order* identifying additional documents to which, with the agreement of counsel for Respondent, Petitioner was entitled access. (ECF No. 111.)

In its March 23, 2009, *Opinion and Order*, this Court also directed the parties to file a joint status report advising the Court of their progress on the discovery permitted by this Court. (*Id*. at 5.) The parties filed a *Joint Status Report* on May 6, 2009, indicating that "Petitioner anticipate[d] being able to complete [] review, file any appropriate motions and agree to a further briefing schedule with Respondent's counsel by September 1, 2009." (ECF No. 112, at 2.)

On November 18, 2010, Petitioner filed a motion for a supplemental discovery order requiring the depositions of Special Prosecutors Daniel Hogan and Douglas Stead. (ECF No. 113.) According to the motion, "Petitioner seeks an order compelling their depositions: (1) solely for the purpose of ascertaining details concerning the existence and location of their trial files, which appear not to have not been produced in discovery by Respondent despite the Court's order to produce all statements related to key witnesses Anthony Lavelle and Robert

2

Brookover, and (2) because Respondent refuses to produce Messrs. Hogan and Stead for deposition voluntarily. (*Id*. at 1.) Respondent opposes Petitioner's motion. (ECF No. 114.) Petitioner filed a reply in support on January 18, 2011. (ECF No. 117.)

Petitioner appears to believe that there may exist, or at one time may have existed, prosecutors' trial files separate from and in addition to those maintained by the OSHP and made available to Petitioner during discovery. Petitioner explains that the boxes marked "prosecutor's files," which the state made available for inspection and copying, "held briefing and other materials related to the appeals of various Lucasville defendants, not the types of materials one would expect to find in a prosecutor's trial file to prepare for trial." (ECF No. 113, at 5.) Petitioner states that numerous attempts to ascertain from Respondent whether the lead prosecutor or special prosecutors possess or ever possessed files separate from the materials maintained by the OSHP have been unsuccessful. Petitioner complains that he "has received only vague confirmation that the lead Lucasville prosecutor, Mark Piepmeier, and special prosecutors Hogan and Stead presently are 'not aware' of the existence of any prosecutors' trial files separate from (1) the materials contained at the Ohio State Highway Patrol warehouse; and (2) certain materials produced on disk to Petitioner in discovery that purport to be prosecutor trial files." (*Id*. at 4.) Asserting that he has been unable to obtain further clarification and that Respondent has refused make Mr. Hogan and Mr. Stead available, Petitioner argues that the depositions of special prosecutors Hogan and Stead are necessary to obtain the following information:

- Whether each prosecuting attorney maintained files during the course of Petitioner's trial related to the Lucasville disturbance;

- If so, the contents of those files;

- How those files were maintained before, during and after trial;

- Whether those files currently exist, and if they were destroyed in whole or in part, when and how that destruction occurred;

- In whose custody those files were placed before, during and after trial;

- Whether those files were integrated into or combined with the trial files of other Lucasville defendants during the special prosecution; and

- Any other details required to determine whether additional prosecutor files related to the trial of Petitioner may exist, and if so, where they are located.

(ECF No. 113, at 7-8.)  Petitioner asserts that the requested discovery is limited in purpose and would effectuate the intent of this Court's original discovery order rather than expand it.

Respondent opposes Petitioner's motion, insisting that, "[t]o date, Counsel for Respondent has provided to Counsel for Robb thousands of pages of documents, and, to the best of Respondent's knowledge and belief, access to or copies of every written or recorded inmate statement regarding the Lucasville riot compiled or obtained by investigators and prosecutors." (ECF No. 114, at 6-7.)  "There is no need for the requested depositions," according to Respondent, because "[a]s indicated by the attached affidavit of Lead Special Prosecutor Piepmeier, Robb's counsel have been provided access to all documents created by prosecutors and currently in existence related to the prosecution of Rob for offenses related to his participation in the Lucasville riot." (*Id*. at 7.)  Respondent asserts that the special prosecutors and Respondent's counsel have acted in good faith and endeavored to comply fully with this Court's discovery order.  While praising this "Court's efforts to afford Robb a full and fair adjudication of his claims of constitutional error," Respondent posits that the requested supplemental discovery is not necessary in view of the extensive discovery already undertaken in

this case. (*Id*.)

In response, Petitioner emphasizes that he "has not claimed that anyone has acted in bad faith." (ECF No. 117, at 3.) Petitioner's counsel state that they have located nothing in the Lucasville riot files maintained by OSHP resembling a typical trial file or demonstrating that prosecutors in Petitioner's case met with or interviewed Lavelle, Brookover, or any other inmate witness. Noting the unlikelihood of experienced prosecutors trying a capital case without maintaining organized files for use leading up to and during trial or calling inmate witnesses without first interviewing them or reviewing their statements, Petitioner insists that he has shown good cause to inquire whether Special Prosecutors Hogan or Stead maintained separate files that are not part of the collection of materials concerning the Lucasville riot maintained by the OSHP in Columbus, Ohio. Petitioner further argues that the affidavit of Chief Special Prosecutor Mark Piepmeier does not resolve sufficiently doubts about whether additional trial files exist. (*Id*. at 4-5.) Petitioner proceeds to offer examples of materials from the OSHP warehouse that counsel reviewed that did <u>not</u> correlate to Mr. Piepmeier's affidavit. (*Id*. at 5-11.) Petitioner insists that "[t]his most recent review of these boxes – all of which purport to contain SOCF [Southern Ohio Correctional Facility] Prosecution Files for Robb and George Skatzes – demonstrated that there is no set of organized documents contained therein that appear to be the prosecutors' trial files." (*Id*. at 6.) Surmising that certain boxes–identified as HPC 93240, 93248, 93249, and 93260–contain materials that might have constituted part of the prosecutors' files for Petitioner's prosecution, Petitioner argues that "the unorganized and jumbled state of the documents make it impossible to determine whether or not the files contained in these boxes are the complete trial files of the prosecutors, whether some of the documents are related to the Skatzes prosecution

and not the Robb prosecution, or whether significant documents or statements are missing." (*Id*. at 11-12.)  Petitioner proceeds to argue that "[t[he only way to determine if these boxes indeed do constitute the entire trial files of the prosecutors is to obtain copies of the documents in the boxes and then to depose Prosecutors Hogan and Stead to determine if they recognized the documents as their complete trial file or whether there are documents that appear to be missing, including additional statements that would be discoverable." (*Id*. at 12.)

The discovery processes contained in the Federal Rules of Civil Procedure do not automatically apply in habeas corpus actions.  "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  In *Harris v. Nelson*, 394 U.S. 286, 295 (1969), the United States Supreme Court held that the "broad discovery provisions" of the Federal Rules of Civil Procedure did not apply in habeas corpus proceedings.  As a result of the holding in *Harris*, the Rules Governing Section 2254 Cases In United States District Courts were promulgated in 1976.  Specifically, Rule 6(a) now provides--

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is ... entitled to relief....'"  *Bracy*, 520 U.S. at 908-909 (quoting *Harris*, 394 U.S. at 300).  *See also Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).  In keeping with the well settled principle that habeas petitioners are not entitled

to go on a fishing expedition in search of damaging evidence, this "good cause" standard requires a petitioner to at least attempt to identify what he expects to uncover through his discovery requests. *See Williams v. Bagley, supra*, 380 F.3d at 976.

Determining whether Petitioner is entitled to conduct discovery on this claim begins with identifying the essential elements of this claim. *Bracy*, 520 U.S. at 904. Petitioner argues in his forty-ninth claim for relief, among other things, that the prosecution failed to disclose material, exculpatory evidence in violation of the constitutional rights discussed in *Brady*. Petitioner argues that there is reason to believe that testimony provided by inmate Anthony Lavelle implicating petitioner in the murder of prison guard Robert Vallandingham, and by inmate Robert Brookover implicating petitioner in the murder of inmate David Sommers, may have been untrue and that the prosecution may have knowingly presented false testimony in this regard. *Brady* requires the government "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987). In *Giglio v. United States*, 405 U.S. 150, 154 (1972), the Supreme Court held that the *Brady* rule includes evidence that might impeach the credibility of state witnesses. Materiality is determined by asking "whether the *Brady* violation undermines confidence in the verdict, because there is a reasonable probability that there would have been a different result had the evidence been disclosed." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). Petitioner need not prove these elements; rather, he must show that if the facts are developed through the discovery he seeks, he could prove a *Brady* violation and would be entitled to relief. *See Harris, supra*, 394 U.S. at 299.

This Court has determined already that Petitioner satisfied the good cause standard set

forth in Habeas Corpus Rule 6 to discovery of all prior statements made by Anthony Lavelle and Robert Brookover in connection with the Lucasville riot investigation, as well as all statements provided by others in connection with the Lucasville riot investigation that did *not* implicate Petitioner Robb in the murders of prison guard Robert Vallandingham or of inmate David Sommers.  The precise issue before the Court is whether Petitioner has demonstrated good cause to conduct depositions of Special Prosecutors Hogan and Stead for the limited purpose of determining whether they maintained or knew of prosecutors' files related to the prosecution of Petitioner separate from the files maintained by the OSHP.  The Court is satisfied that Petitioner has done so.  The nature of Petitioner's theory and accompanying discovery request is specific, limited, and with enough substantiation as to defy the appearance of being wholly unreasonable.  That is, Petitioner's theory is not born of pure speculation.  Rather, the experience of Petitioner's counsel as litigators, combined with their extensive review of countless documents and other materials, provide a reasonable foundation for the belief that, for whatever reason, the materials that Petitioner's counsel have reviewed do not constitute the complete file that the prosecutors maintained and used in preparation for and during Petitioner's trial.  Further, the affidavit of lead special prosecutor Mark Piepmeier[1] does not definitively foreclose the possibility that additional prosecutor files exist.[2]  Thus, the Court is satisfied that Petitioner has demonstrated good cause

---

[1] Respondent inexplicably failed to submit affidavits of Mr. Hogan or Mr. Stead–the only people with direct knowledge of whether they created or maintained additional prosecutor files.  In any event, the Court is of the view that any such affidavits, as with Mr. Piepmeier's affidavit, might fall short of definitively foreclosing the possibility that additional files might have existed or might still exist.

[2] To be clear, however, the Court emphasizes that Petitioner has not alleged, and this Court has not found, that Respondent's counsel or any of the special prosecutors have acted in bad faith.  Indeed, Respondent's counsel, the special prosecutors, and the OSHP have been

to conduct the limited purpose discovery of depositions of special prosecutors Hogan and Stead, strictly limited to the following:

- Whether each prosecuting attorney maintained files during the course of Petitioner's trial related to the Lucasville disturbance;

- If so, the contents of those files;

- How those files were maintained before, during and after trial;

- Whether those files currently exist, and if they were destroyed in whole or in part, when and how that destruction occurred;

- In whose custody those files were placed before, during and after trial;

- Whether those files were integrated into or combined with the trial files of other Lucasville defendants during the special prosecution; and

- Any other details required to determine whether additional prosecutor files related to the trial of Petitioner may exist, and if so, where they are located.

(ECF No. 113, at 7-8.)

Petitioner adds at the end of his reply that, "[s]hould Prosecutors Hogan and Stead be unable to identify the files as their complete files, Robb would then request authority to depose Special Prosecutors Piepmeier, Breyer, and Longano because Piepmeier's affidavit states that they came into possession of the files at the conclusion of the trials for purposes of preparing the appeals and subsequent litigation." (ECF No. 117, 12.) <u>Nothing</u> in this Court's order should be construed as finding that such a request well taken. This Court issued its original discovery order more than six years ago. Although the Court prefers in death penalty cases such as this case to err on the side of gathering too much information rather than too little, the Court finds

---

cooperative and forthcoming in an effort to ensure full compliance with this Court's original discovery order.

some merit in Respondent's suggestion "that the time has come for concluding the discovery stage of the case." (ECF No. 114, at 7.) That being so, Petitioner **SHALL HAVE** no more than **two (2) months** from the date of this order to conduct the discovery identified herein. When the discovery allowed by this order has been completed, Petitioner **SHALL FILE** a notice indicating that the discovery has been completed and/or any motion for additional discovery. As noted above, however, nothing in this Court's order should be construed as even suggesting that any motion for additional discovery will be granted. If Petitioner files a notice indicating that discovery has been completed and that no further discovery is needed, the Court will schedule a status conference for the purpose of establishing a briefing schedule. If Petitioner files a motion for leave to conduct additional discovery, the parties shall conduct briefing in accordance with the local rules and the Court will issue a decision once the motion is at issue.

    **IT IS SO ORDERED.**

                                                                             s/Algenon L. Marbley
                                                                             **ALGENON L. MARBLEY**
                                                                             **United States District Judge**

**Date: September 12, 2011**