IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JASON ROBB,

    Petitioner,

  v.                                Case No. 2:02-cv-535
                                        JUDGE ALGENON L. MARBLEY
TODD ISHEE, Warden,              Magistrate Judge Norah McCann King

    Respondent.

**OPINION AND ORDER**

        Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. § 2254. This matter is before the Court upon Petitioner's second motion for supplemental discovery (ECF No. 130), Respondent's memorandum in opposition (ECF No. 131), and Petitioner's reply (ECF No. 133).

        This Court's September 16, 2004 *Opinion and Order* granted Petitioner leave to conduct limited discovery on his claim that the prosecution withheld material, exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. (ECF No. 34.) Specifically, in relevant part, the Court authorized Petitioner to obtain all prior statements made by inmates Anthony Lavelle and Robert Brookover in connection with the Lucasville riot investigation, as well as all statements made by others in connection with the riot that did not implicate Petitioner Robb in the murders of corrections officer Robert Vallandingham or of inmate David Sommers.

        Counsel for Respondent secured the agreement of the principal attorney involved in the prosecution of the offenses related to the Lucasville riot, and of an official of the Ohio State

Highway Patrol ("OSHP") familiar with the location and storage of investigative reports and other documents concerning the riot, to make available for inspection and copying by Petitioner's counsel not only investigative files stored in Columbus, Ohio warehouses, but also the files maintained by the trial prosecutors in Petitioner's case, subject to *in camera* inspection by this Court of documents believed by the prosecutors to constitute attorney work product not subject to disclosure. After Respondent submitted those materials and the Court conducted its *in camera* review, the Court issued an *Opinion and Order* on February 26, 2009, under seal, identifying those documents that, in the Court's view, constituted protected attorney work product not subject to disclosure. (ECF No. 106.) On March 23, 2009, the Court issued another *Opinion and Order* identifying additional documents to which, with the agreement of counsel for Respondent, Petitioner was entitled access. (ECF No. 111.)

In its March 23, 2009, *Opinion and Order*, this Court also directed the parties to file a joint status report advising the Court of their progress on the discovery permitted by this Court. (*Id*. at 5.) The parties filed a *Joint Status Report* on May 6, 2009, indicating that "Petitioner anticipate[d] being able to complete [] review, file any appropriate motions and agree to a further briefing schedule with Respondent's counsel by September 1, 2009." (ECF No. 112, at 2.)

On November 18, 2010, Petitioner filed a motion for a supplemental discovery order requiring the depositions of Special Prosecutors Daniel Hogan and Douglas Stead because Petitioner appeared to believe that there existed, or at one time may have existed, prosecutors' trial files separate from and in addition to those maintained by the OSHP and made available to Petitioner during discovery. (ECF No. 113.) Over Respondent's objection, this Court on September 12, 2011, granted Petitioner's motion, concluding that Petitioner had demonstrated

2

good cause to conduct depositions of special prosecutors Hogan and Stead, strictly limited to determining the following:

- Whether each prosecuting attorney maintained files during the course of Petitioner's trial related to the Lucasville disturbance;

- If so, the contents of those files;

- How those files were maintained before, during and after trial;

- Whether those files currently exist, and if they were destroyed in whole or in part, when and how that destruction occurred;

- In whose custody those files were placed before, during and after trial;

- Whether those files were integrated into or combined with the trial files of other Lucasville defendants during the special prosecution; and

- Any other details required to determine whether additional prosecutor files related to the trial of Petitioner may exist, and if so, where they are located.

(ECF No. 127, at 9.)  Noting that it had issued its original discovery order more than six years earlier, the Court also cautioned that nothing in its order should be construed as even suggesting that any motion for additional discovery would be granted.  (*Id*. at 10.)

That said, Petitioner now seeks leave to conduct similar depositions of the special prosecutors Mark Piepmeier, William Breyer, and Thomas Longano, as well as former Troopers Marc Rogols and Howard Hudson.  (ECF No. 130, at 1.)  Petitioner explains that:

> Based on information obtained from the deposition of former Special Prosecutor (now Judge) Daniel Hogan conducted on December 7, 2011, Petitioner has reason to believe: that Special Trial Prosecutors Hogan and Douglas Stead created a trial file that they used for the trial of Jason Robb; that those files were turned over to then Trooper Marc Rogols at the Ohio State Highway Patrol Headquarters upon the completion of the George Skatzes trial; and that those files are not contained in the boxes marked "Prosecutors Files" maintained at the Ohio State Highway Patrol Warehouse, as Respondent has consistently maintained.

3

(*Id*.)  According to Petitioner, Judge Hogan during his deposition described the notes and other documents he generated in preparation for Petitioner's trial and the file that he and Stead created consisting of those materials.  (*Id*. at 6.)  Judge Hogan also testified that although he and Stead delivered two or three boxes containing those materials to Trooper Rogols at the OSHP headquarters, he could not find among the ten boxes in OSHP's possession labeled "Prosecutor's Files" anything resembling the trial files he and Stead had created, used, and then delivered to Trooper Rogols.  (*Id*. at 6-7.)  Petitioner accordingly submits that he "requires the depositions of those who had custody of that file after the trial in order to determine its location or whether it has been destroyed."  (*Id*. at 7.)  Petitioner contends that "[w]hat has become of those files can only be determined by deposing those who had custody of and access to those files after they were delivered to Trooper Rogols."  (*Id*. at 8-9.)

      Respondent opposes Petitioner's motion.  (ECF No. 131.)  Specifically, Respondent asserts that "[t]he deposition testimony of Mr. Hogan and Mr. Stead establishes that [Petitioner] has been given access to the statements of potential witnesses used by the prosecutors, which were referenced in the database compiled by the Highway Patrol or, with respect to the statements of co-defendants, were disclosed to the defense prior to trial."  (*Id*. at 8-9.)  Respondent also argues that materials prepared by the prosecutors in preparation for voir dire, examination of witnesses, opening statements, and closing arguments "on their face constitute the work product of attorneys that would not have been subject to disclosure prior to trial."  (*Id*. at 9.)   In other words, Respondent appears to reason that continued search for the trial file(s) of Hogan and Stead is unnecessary because any witness statements the file might have included were catalogued in the database to which Petitioner's counsel has had access and because most

of the materials in the file are protected by the attorney work product doctrine.

Petitioner argues in his reply that "[t]he Warden's Response misses the point of the depositions of Special Prosecutors Hogan and Stead, and the Supplemental Motion for Discovery for leave to conduct depositions of the appellate special prosecutors and the former Highway Patrol Officers who had custody of the trial files of Hogan and Stead." (ECF No. 133, at 1-2.) Petitioner explains that "[s]tatements were taken from inmate witnesses, including Lavelle and Brookover, by the trial prosecutors[]" and that "[t]he content and extent of those statements is presently unknown – only because the files of the special prosecutors have not yet been disclosed and are not within the boxes of documents that have been disclosed from the Alum Creek Warehouse." (*Id*. at 2.) Asserting that "Stead at no time stated that statements made by inmate witnesses about Jason Robb were entered into the database[,]" Petitioner argues that "[t]his leaves open the question of whether there were any statements from Lavelle or Brookover or from any other witnesses that were exculpatory to Jason Robb – that were not turned over to defense counsel at trial." (*Id*. at 3.) Petitioner concludes by asserting that because neither Stead nor Hogan could find their trial file among the materials labeled "Prosecutors Files" at the Alum Creek Warehouse, "[t]he only remaining source of information about the location of those files or what may have become of the files are the special prosecutors who took over the prosecution of Robb after trial, Piepmeier, Breyer, and Longano, and the Highway Patrol officers who have had custody and control of the files, Rogols and Hudson." (*Id*. at 4.) The Court agrees.

The discovery processes contained in the Federal Rules of Civil Procedure do not automatically apply in habeas corpus actions.  "A habeas petitioner, unlike the usual civil litigant

5

in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  In *Harris v. Nelson*, 394 U.S. 286, 295 (1969), the United States Supreme Court held that the "broad discovery provisions" of the Federal Rules of Civil Procedure did not apply in habeas corpus proceedings.  As a result of the holding in *Harris*, the Rules Governing Section 2254 Cases In United States District Courts were promulgated in 1976. Specifically, Rule 6(a) now provides--

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is ... entitled to relief....'" *Bracy*, 520 U.S. at 908-909 (quoting *Harris*, 394 U.S. at 300).  *See also Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).  In keeping with the well settled principle that habeas petitioners are not entitled to go on a fishing expedition in search of damaging evidence, this "good cause" standard requires a petitioner to at least attempt to identify what he expects to uncover through his discovery requests.  *See Williams v. Bagley, supra*, 380 F.3d at 976.

The Court long ago determined that Petitioner had satisfied the good cause standard set forth in Habeas Corpus Rule 6 to discovery of all prior statements made by Anthony Lavelle and Robert Brookover in connection with the Lucasville riot investigation, as well as all statements provided by others in connection with the Lucasville riot investigation that did ***not*** implicate Petitioner Robb in the murders of prison guard Robert Vallandingham or of inmate David

6

Sommers.  More recently, the Court also determined that Petitioner had demonstrated good cause to conduct depositions of Special Prosecutors Stead and Hogan for the limited purpose of ascertaining the location of the trial file that Stead and Hogan created in connection with Petitioner's trial.  The precise issue before the Court now is whether good cause exists for Petitioner to conduct depositions of Special Prosecutors Piepmeier, Breyer, and Longano, as well as former OSHP Troopers Rogols and Hudson, for the limited purpose of determining whether the trial file that Hogan and Stead created for Petitioner's trial still exists and, if so, where it is.  The Court is satisfied that Petitioner has done so.  The nature of Petitioner's theory and accompanying discovery request is specific, limited, and with enough substantiation as to defy the appearance of being wholly unreasonable.  That is, Petitioner's theory is not born of pure speculation.  Rather, it is based on concrete facts suggesting if not establishing that the file Hogan and Stead created and turned over to OSHP was not among the materials labeled "Prosecutors Files" maintained by OSHP.  Nor is it pure speculation or wholly unreasonable to believe that a prosecution trial file is as likely as not to contain materials falling within the scope of this Court's discovery order.  That being so, depositions of the special prosecutors are warranted because the record gives rise to a reasonable inference that all of the special prosecutors used or had access to all of the trial files.  Depositions of troopers Rogols and Hudson are warranted because they were the officials who took possession of and who were charged with maintaining the trial files created by the special prosecutors.  Thus, the Court is satisfied that Petitioner has demonstrated good cause to conduct depositions of special prosecutors Piepmeier, Breyer, and Longano, as well as former troopers Rogols and Hudson, strictly limited to ascertaining whether the trial file of Special Prosecutors Daniel Hogan and

7

Douglas Stead from the trial of Petitioner Jason Robb still exists; if it exists, its location; if it does not exist, what has happened to the file since it was turned over to then Trooper Rogols at the Headquarters of the Ohio Highway Patrol following the trial of George Skatzes, and:

- How the trial file of Special Prosecutors Hogan and Stead was maintained by the Ohio State Highway Patrol and the Special Prosecutors after the trial;

- In whose custody the files were placed after trial;

- Whether the file was integrated into or combined with the trial files of other Lucasville defendants during the appeals and post-conviction processes by the special appellate prosecutors; and

- Whether the file currently exists, or if it was destroyed in whole or in part, when and how that destruction occurred;

- Any other details required to determine whether additional prosecutor files related to the trial of Petitioner may exists, and if so, where they are located.

(ECF No. 130, at 4.)

It is with considerable reticence that the Court grants Petitioner's request. This case is nearly ten years old and, to date, has consisted entirely of discovery. That said, the undue delay that discovery is causing in this case is not reason enough to deny or stymie the discovery to which Petitioner is entitled under Habeas Corpus Rule 6.

For the foregoing reasons, the Court **GRANTS** Petitioner's motion for supplemental discovery. (ECF No. 130.) Petitioner **SHALL HAVE** no more than **two (2) months** from the date of this order to conduct the discovery identified herein. When the discovery allowed by this order has been completed, Petitioner **SHALL FILE** a notice indicating that the discovery has been completed and/or any motion for additional discovery. If Petitioner files a notice indicating that discovery has been completed and that no further discovery is needed, the Court will schedule a status conference for the purpose of establishing a briefing schedule. If Petitioner

files a motion for leave to conduct additional discovery, the parties shall conduct briefing in accordance with the local rules and the Court will issue a decision once the motion is at issue.

The Court further **DENIES as moot** Petitioner's unopposed motion for an extension of time to complete discovery (ECF No. 128).  It appears that the discovery contemplated by that motion has in fact already been completed.

**IT IS SO ORDERED.**

      s/Aglenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Judge**

**Date:  February 24, 2012**